# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kyle-William Brenizer; Travis R. Fairbanks; Johnnie L. Haynes; Montez T. Lee; and All Inmates of the Sherburne County Jail, | Case No. 21-cv-1301 (DSD/TNL) |
| Plaintiffs, | |
| v. | **AMENDED[1] REPORT & RECOMMENDATION** |
| The County of Sherburne; Joel Brott, Sherburne County Sheriff, in his individual and official capacities; Donald Starry, Sherburne County Chief Deputy Sheriff, in his individual and official capacities; Pat Carr, Sherburne County Jail Commander, in his individual and official capacities; Brian Frank, Sherburne County Jail Administrator, in his individual and official capacities; Dave Isias, Assistant Sherburne County Jail Administrator, in his individual and official capacities; Chris Bloom, Sherburne County Jail Captain, in his individual and official capacities; Tom Zerwas, Sherburne County Jail Captain, in his individual and official capacities; Steve Doran, Sherburne County Chief Deputy, in his individual and official capacities; and Mark Fritel, Sherburne County Jail Programs Coordinator, in his individual and official capacities, | |
| Defendants. | |

Nicholas Ratkowski, Contreras & Metelska, P.A., 200 University Avenue West, Suite 200, St. Paul, MN 55103 (for Plaintiffs); and

Aaron Mark Bostrom and Stephanie A. Angolkar, Iverson Reuvers, 9321 Ensign Avenue South, Bloomington, MN 55438 (for Defendants).

---

[1] The Court issues this Amended Report & Recommendation to correct an inadvertent typographical error made regarding the year certain relevant events took place, namely, changing "2000" to "2020." *See* ECF No. 30 at 3, 14, 25 n.5. In all other respects, the Amended Report & Recommendation is the same.

# I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Amended Motion to Dismiss, ECF No. 16. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable David S. Doty, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held. ECF No. 29. Nicholas Ratkowski appeared on behalf of Plaintiffs. Stephanie A. Angolkar and Aaron Mark Bostrom appeared on behalf of Defendants.

# II. AMENDED COMPLAINT

Plaintiffs Kyle-William Brenizer, Travis R. Fairbanks, Johnnie L. Haynes, Montez T. Lee, and the unnamed Inmates of the Sherburne County Jail (collectively, "Plaintiffs") are or were confined at the Sherburne County Jail ("the Jail"), located in Sherburne County, Minnesota, between March 19, 2020 and the present. Am. Compl. ¶¶ 1-2, 11-15, 105-09, ECF No. 15.

Defendant County of Sherburne ("the County") "is a local government unit" that "has implemented, executed, and adopted" certain "policies, practices, acts, and omissions" with respect to the Jail. Am. Compl. ¶ 17. Defendants Joel Brott, Donald Starry, Pat Carr, Brian Frank, Dave Isias, Chris Bloom, Steve Doran, and Mark Fritel are/were employed by the County in various roles and "collectively responsible for the operation and administration of the Jail and the care, custody, and treatment of all persons confined at the Jail." Am. Compl. ¶¶ 18-26; *see also* Am. Compl. ¶ 47.

2

### A. Jail Cells & Gyms

The Jail is a facility in which individuals "awaiting trial or who have been sentenced to serve time for various criminal or civil offenses" are confined.  Am. Compl. ¶ 42; *see* Am. Compl. ¶ 43.  Plaintiffs are housed "in cells that have a 4-foot by 6-foot useable space."  Am. Compl. ¶ 44.  As alleged in the Amended Complaint, "[w]ithin this small space, each cell has an institutional sink, toilet, desk, and bunk beds."  Am. Compl. ¶ 44.

"The Jail has five designated exercise areas referred to as gyms."  Am. Compl. ¶ 46.  "One of these gyms is designated or reserved for [Jail staff]."  Am. Compl. ¶ 46.

### B. Exercise Time

The Jail's inmate handbook prohibits exercising "in the housing unit day room."  Am. Compl. ¶ 55.

#### 1. Restrictions Imposed

Beginning on March 19, 2020,[2] and continuing through July 6, 2021, "Defendants" prohibited Plaintiffs from using the gyms for exercise, thereby taking away Plaintiffs' out-of-cell exercise time.  Am. Compl. ¶¶ 47-49.  During this time, "Plaintiffs were not allowed to exercise anywhere but in their cells."  Am. Compl. ¶ 53; *see also* Am. Compl. ¶ 56.  In particular, Plaintiffs allege Defendants confined Plaintiffs to their cells for 23 hours a day, seven days a week, between November 4 and 26, 2020.  Am. Compl. ¶ 97.  Plaintiffs were

---

[2] *See supra* n.1.  The Court takes judicial notice that, on March 13, 2020, the President of the United States declared a national emergency in response to COVID-19.  *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  This national emergency was continued on February 24, 2021.  *Continuance of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic*, 86 Fed. Reg. 11,599 (Feb. 24, 2021).

again confined to their cells for 23 hours a day, seven days a week, between March 8 and 26, 2021.  Am. Compl. ¶ 99.

Beginning July 6, 2021, the gyms were made available two days per week for two hours per unit.[3]  Am. Compl. ¶¶ 51-52.  This schedule resulted in Plaintiffs being "allowed no more than one hour of exercise per [gym] day" for a maximum of two hours of out-of-cell exercise time per week.  Am. Compl. ¶¶ 52, 54, 57.

At all times relevant, exercising in the day room was not permitted. Am. Compl. ¶¶ 56-57.  Walking, however, was permitted.  Am. Compl. ¶ 73.  At all times relevant, Jail staff were permitted to use their designated gym.  Am. Compl. ¶ 59.  Plaintiffs allege they have "suffered from muscle atrophy as a direct or proximate result of their inability to physically exercise in a constitutionally adequate manner." Am. Compl. ¶ 91.  They further allege they "have suffered from weight gain, mental and emotional stress, muscle atrophy [sic], and/or body aches and pains as a direct result of their inability to physically exercise in a constitutionally adequate manner."  Am. Compl. ¶ 92.

Plaintiffs allege "Defendants have been using Covid-19 as an excuse to not allow" access to the gyms, "stating that 'the close contact between inmates may spread the virus.'" Am. Compl. ¶ 64.  "Plaintiffs allege that Defendants' reliance on Covid-19 is a pretextual justification" for the restrictions imposed on out-of-cell exercise time.  Am. Compl. ¶ 65. According to Plaintiffs, prisoners "are allowed to interact with one another in close contact

---

[3] Defendants' memorandum, attached declaration, and exhibits suggest that the Jail's gyms may now have greater availability.  *See, e.g.*, Defs.' Mem. in Supp. at 5, 25-26, ECF No. 20.  For purposes of determining whether Plaintiffs have stated a claim, the Court has confined itself to the allegations in the Amended Complaint.  *See infra* Section III.B.

in the day space areas of the units," and, "at least before July 6, 2021, some or all of the [gyms] were converted to movie rooms."  Am. Compl. ¶ 66.  Jail staff were also allowed to congregate in their designated gym.  Am. Compl. ¶ 72.  Because of the close contact "permitted, and often forced, . . . in the day space areas, gyms converted to movie rooms, and the[] cells" between prisoners, Plaintiffs allege that "the Jail's stated concern with close contact in areas designated for exercise is pretextual and insincere."  Am. Compl. ¶ 67.  Plaintiffs allege that "Defendants have refused to provide [them] with any constitutionally adequate opportunities or facilities for exercise out of the[ir] cells and have failed to develop an action plan to address and mitigate this deprivation of [their] basic human need for physical exercise."  Am. Compl. ¶ 103.

### 2.  Grievances

"Plaintiffs have expressed concern on multiple occasions, writing grievances and kites in an attempt to address" the limitations on out-of-cell exercise time.  Am. Compl. ¶ 62.  "Since March 19, 2020, several inmates have complained or filed grievances about myriad mental and physical health problems, many of which are a direct or proximate consequence of Defendants' decision to deprive Plaintiffs of their time and ability to physically exercise outside of their cells."  Am. Compl. ¶ 63.

On or about the end of February 2021, Brenizer wrote a grievance regarding the lack of out-of-cell exercise time.  Am. Compl. ¶ 70.  "Defendants" responded "[t]he Minnesota Department of Health instructed correctional facilities to avoid congregated recreational time for the safety of the inmates and staff."  Am. Compl. ¶ 71.

Approximately one month later, Brenizer submitted a kite asking "Defendants why the restriction placed on [out-of-cell] exercise time had not been addressed or lifted in over a year." Am. Compl. ¶ 68. Brenizer was told "precaution measures are in place to ensure all inmates['] health and safety through covid-19" and an "[i]n cell workout plan [was] available upon request." Am. Compl. ¶ 69.

In mid-April, "Fairbanks wrote a grievance about the restriction of exercising outside of his cell." Am. Compl. ¶ 78. A sergeant responded that Fairbanks would "not be allowed to exercise outside of [his] cell." Am. Compl. ¶ 79.

### C. Cell Conditions

Plaintiffs allege "Black Mold grows in the vents and around the air ducts and shafts" of the air exchange ventilation system for the Jail's cells. Am. Compl. ¶ 60.

In early May 2021, Lee submitted a grievance stating "that black mold was growing in the air ventilation duct in his cell, and that there was food, urine, and fecal matter on the floors." Am. Compl. ¶ 80. At the time, Lee was in "a segregation cell for confinement." Am. Compl. ¶ 80. Lee spent "several days in segregation" before being transferred to another unit. Am. Compl. ¶ 81.

Plaintiffs allege that "[p]rolonged exposure to Black Mold is known to have disastrous health consequences that can include but are not limited to nausea, vomiting, and bleeding in the lungs and nose." Am. Compl. ¶ 86. Plaintiffs allege that "Defendants have actual or constructive knowledge that they are exposing Plaintiffs to Black Mold" and of the risks of such exposure. Am. Compl. ¶¶ 87-88.

**D. Claims**

Plaintiffs allege "Defendants' conditions or treatment of Plaintiffs are so inherently severe as to transcend elemental concepts of decency." Am. Compl. ¶ 85. They further allege that "Defendants' treatment of Plaintiffs is degrading to human dignity, involves deprivations of basic human needs and severe health concerns by prohibiting Plaintiffs from adequate exercise, and subjects [them] to unsanitary conditions by placing inmates into cells that have Black Mold growing in the ventilation ducts." Am. Compl. ¶ 85; *see also* Am. Compl. ¶ 93. Plaintiffs allege that, "[a]s a result of the policies, practices, acts, and omissions of Defendants, . . . [their] confinement in the Jail is unconstitutionally dangerous, punitive, and unlawful." Am. Compl. ¶ 104.

Plaintiffs bring four counts against Defendants for violations of their civil rights under 42 U.S.C. § 1983. In Counts 1 and 2, Plaintiffs allege the out-of-cell exercise time and unsanitary cell conditions violate their constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. ¶¶ 116-27. In Count 3, Plaintiffs allege, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), that the out-of-cell exercise policies—both the no out-of-cell exercise policy between March 2020 and July 2021 and the two-hours-per-week exercise policy beginning July 2021— were adopted by various County officials, including some of Defendants, with "deliberate and/or conscious . . . disregard [of] the known risk of harm that would result from depriving Plaintiffs of the right to engage in the minimum amount of physical exercise protected by the Constitution," and such policies were the moving force behind the deprivation of a constitutionally adequate amount of physical exercise time. Am. Compl. ¶¶ 128-46. In

7

Count 4, Plaintiffs allege, under *City of Canton v. Harris*, 489 U.S. 378 (1989), that the County failed to properly train "Defendant correctional facilities officers," "other officers," and Jail staff regarding constitutionally adequate amounts of exercise and "the physical, mental, and emotional harms" accompanying the denial of such exercise, and the County was aware of the need for more and different training regarding constitutionally adequate amounts of exercise. Am. Compl. ¶¶ 147-57.

Plaintiffs seek class certification and declaratory, monetary, and injunctive relief, including punitive damages. Am. Compl. ¶ 158.

### III. AMENDED MOTION TO DISMISS

Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

### A. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In deciding a motion to dismiss under Rule 12(b)(6), a court "assume[s] the truth of all factual allegations in the complaint and make[s] all reasonable inferences in favor of the nonmoving party." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022).

### B.  Matters Outside the Amended Complaint

Attached to Defendants' motion to dismiss was the Declaration of Brian Frank, the Jail Administrator, and the following exhibits: (1) the Minnesota Department of Health's Interim Guidance for Correctional Settings Based on Community Facility Transmission Levels of COVID-19; (2) the Jail's COVID-19 Response Plan 5-20-21; (3) the Jail's COVID-19 Response Plan 7-19-21; (4) the Jail's COVID-19 Response Plan 8-26-21; (5) the Jail's current Recreational Policy; (6) the Jail's 3-30-21 COVID Response Plan; (7) the Jail's 4-15-20 COVID Response Plan; (8) an update published by the Centers for Disease Control and Prevention ("CDC") on the Delta variant of COVID-19, entitled "Delta Variant: What We Know About the Science"; and (9) "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" published by the CDC.  ECF Nos. 21, 21-1 through 219.

Collectively, the Frank Declaration and the exhibits relate to Plaintiffs' claims regarding the restriction of their out-of-cell exercise time.  The parties agree that Exhibit 1, the Minnesota Department of Health's Interim Guidance for Correctional Settings Based

on Community Facility Transmission Levels of COVID-19, ECF No. 22-1, is a public record that may be considered by the Court without converting Defendants' motion into one for summary judgment.  Defs.' Mem. in Supp. at 7 n.2; Pls.' Mem. in Opp'n at 6-7, ECF No. 24; Defs.' Reply at 3, ECF No. 28.  The parties hotly contest whether the Frank Declaration and the remaining exhibits may be considered.

Courts "generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim or for judgment on the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  "Most courts view matters outside the pleading as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings."  *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003) (quotation omitted).  A court, "may, however, consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings."  *Id.* (citing *Porous Media*, 186 F.3d at 1079).  Thus, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media*, 186 F.3d at 1079); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).  "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'"  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)

10

(quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).   When

evaluating a Rule 12(b)(6) motion, "the court has complete discretion to determine whether

or not to accept any material beyond the pleadings."   *Stahl v. United States Dep't of Agric.*,

327 F.3d 697, 701 (8th Cir. 2003) (quotation and citations omitted).

   The Court will exercise its discretion not to consider the Frank Declaration or any

of the exhibits attached thereto, including Exhibit 1.   The main thrust of Plaintiffs' out-of-

cell exercise claims is that Defendants demonstrated deliberate indifference in the

restriction of their out-of-cell exercise time.   The Frank Declaration proffers additional

facts and justifications as to the adoption of the out-of-cell exercise policies and why

Plaintiffs' out-of-cell exercise time may have been restricted during the relevant periods.

As Defendants themselves state, the Frank Declaration "explains why Plaintiffs were

locked down during the dates listed in the Amended Complaint."   Defs.' Reply at 3.

Similarly, Plaintiffs have alleged that "Defendants have refused to develop an action plan

to mitigate the deprivation" of the out-of-cell exercise time.   Am. Compl. ¶ 62.   Defendants

proffer the Frank Declaration and the Jail's COVID-19 plans as evidence "the Jail provided

other recreational opportunities."   Defs.' Mem. in Supp. at 5.

   In the end, it may be that the restriction of Plaintiffs' out-of-cell exercise time

during the periods of issue was wholly justified.   But, the inquiry on a motion to dismiss is

plausibility, not probability.   *See Twombly*, 550 U.S. at 556; *Nelson Auto Center, Inc. v.*

*Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *see also Delker*, 21 F.4th

at 1024 ("The key issue is threshold plausibility, to determine whether a plaintiff is entitled

to present evidence in support of his claim and not whether it is likely that he will ultimately

11

prevail."). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation omitted); *see Delker*, 21 F.4th at 1024. Accordingly, for purposes of the instant motion, the Court confines itself to allegations of the Amended Complaint.

### C. Applicable Constitutional Authority

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

Plaintiffs' out-of-cell exercise and unsanitary-conditions claims all concern the conditions of their confinement. The applicable constitutional authority for a conditions-of-confinement claim depends on whether the individual is a pretrial detainee or a convicted inmate. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). For convicted inmates, "[t]he Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials, who must provide humane conditions of confinement . . . ." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quotation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see, e.g.*, *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

12

"The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in a sense that '[d]ue process requires that a pretrial detainee not be punished.'" *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (alteration in original) (quoting *Bell*, 441 U.S. at 535 n.16). Accordingly, pretrial detainees may not "be punished without running afoul of the Fourteenth Amendment." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir.), *cert. denied*, 142 S. Ct. 232 (2021). "[T]his prohibition against punishment encompasses conditions of confinement." *Id.* Plaintiffs' claims encompass individuals subject to pretrial detention as well as individuals subject to incarceration.

### D. Out-of-Cell Exercise Time

"[L]ack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Wishon v. Gammon*, 678 F.2d 446, 449 (8th Cir. 1992); *see also Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (including exercise as example of "a single, identifiable human need"). "In considering an alleged deprivation of adequate exercise, courts must consider several factors, including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of the confinement." *Wishon*, 678 F.2d at 449. The Eighth Circuit Court of Appeals has stated that an "inmate that is confined to his cell for more than sixteen hours per day should ordinarily be given the opportunity to exercise for at least one hour per day outside the cell." *Campbell v. Cauthron*, 623 F.3d 503, 507 (8th Cir. 1980) (footnote omitted). And, in *Phillip v. Norris*, the Eighth Circuit observed that the denial of exercise privileges for 37 days "is perhaps pushing the outer limits of acceptable restriction." 320 F.3d 844, 847 (8th Cir. 2003).

13

Plaintiffs allege that they are confined in cells with 24 square feet of "useable space," within which "each cell has an institutional sink, toilet, desk, and bunk beds." Am. Compl. ¶ 44. Plaintiffs allege they have been prohibited from accessing the gyms for exercise between March 19, 2020[4] and July 6, 2021. In particular, between November 4 and 26, 2020 (22 days) and March 8 and 26, 2021 (18 days), Plaintiffs were confined to their cells for 23 hours per day. Plaintiffs were not permitted to exercise in the day room, and only allowed to exercise in their cells. Beginning on July 6, 2021, the gyms were made available on a schedule permitting one hour of exercise per each of two gym days, resulting in a maximum of two hours of out-of-cell exercise time per week. Plaintiffs allege they have suffered muscle atrophy, weight gain, mental and emotional distress, and body aches and pains as a result of the limitations on their out-of-cell exercise time.

Defendants acknowledge that, "[i]n isolation, the [*Wishon*] factors present a close call." Defs.' Mem. in Supp. at 12. Defendants assert, however, that Plaintiffs have not sufficiently alleged deliberate indifference to their out-of-cell exercise time in light of the COVID-19 pandemic. Plaintiffs have sued Defendants in their individual and official capacities related to their out-of-cell exercise time as well as brought claims under *Monell* and *City of Canton*. The Court considers each in turn

### 1. Defendants in Their Individual Capacities

"To state a claim under § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"

---

[4] *See supra* n.1.

*Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 676). "A prison official is deliberately indifferent if he 'knows of and disregards' a substantial risk of serious harm to an inmate." *Id.* (quoting *Farmer*, 511 U.S. at 837). To successfully state a claim for deliberate indifference, Plaintiffs "must show [Defendants] acted with a 'sufficiently culpable state of mind.'" *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834). "[M]ere negligence or inadvertence does not rise to the level of deliberate indifference." *Id.*; *see also Farmer*, 511 U.S. at 835. It "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835; *accord Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). "The test is akin to the criminal rule of 'recklessness.'" *Letterman*, 789 F.3d at 862; *accord Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019); *see also Farmer*, 511 U.S. at 836, 839-40. "A necessary element of deliberate indifference is that the defendant officials had actual knowledge of the substantial risk posed to an inmate's health and safety." *Kulkay*, 847 F.3d at 644. For individual defendants, "constructive knowledge, or the should-have-known standard is not sufficient to support a finding of deliberate indifference." *Blair*, 929 F.3d at 987 (quotation omitted); *see Farmer*, 511 U.S. at 837-38, 843 n.8.

Plaintiffs have not alleged sufficient facts that any of Defendants individually acted with a sufficiently culpable state of mind. Plaintiffs generally allege that each Defendant is "responsible for the operations and administration of the Jail and the care, custody, and treatment of all persons confined in the Jail." Am. Compl. ¶¶ 18-26. Plaintiffs allege that they "have expressed concern on multiple occasions, writing grievances and kites in an attempt to address" the limitation on out-of-cell exercise. Am. Compl. ¶ 61; *see also* Am.

15

Compl. ¶¶ 68, 70.  But, Plaintiffs do not identify which Defendants their out-of-cell exercise complaints were directed to, which Defendants they interacted with regarding these complaints,  or which Defendants were involved in responding to their complaints. The only individual identified as having been involved in responding to Plaintiffs' out-of-cell exercise complaints is not a defendant in this action.  *See* Am. Compl. ¶ 79 ("Plaintiff Fairbanks received a response from Nicholas Eckstrom, a Sergeant at the [Jail], stating: 'You will not be allowed to exercise out of your cell.'").  Even accepting Plaintiffs' allegations as true and construing them in Plaintiffs' favor, Plaintiffs have failed to plead facts showing that *these* Defendants had actual knowledge of a substantial risk of serious harm posed to Plaintiffs' health and safety by restricting their out-of-cell exercise time and willfully overlooked that danger.  *See East v. Minnehaha Cty.*, 986 F.3d 816, 820 (8th Cir. 2021); *Kulkay*, 847 F.3d at 644.

Accordingly, the Court recommends that the out-of-cell exercise claims in Counts 1 and 2 against Defendants in their individual capacities be dismissed without prejudice.[5]

## 2. County

Plaintiffs have also sued Defendants, who are County employees, in their official capacities as well as the County itself.

---

[5] Because the Court recommends that the claims against Defendants in their individual capacities be dismissed, the Court need not address the qualified-immunity arguments raised in the alternative.  *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### a.  Defendants in Their Official Capacities

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *accord Parrish*, 594 F.3d at 997; *see also Monell*, 436 U.S. at 690 n.55.  Thus, Plaintiffs' claims against Defendants in their official capacities are essentially claims against the County.  *See Thiel v. Korte*, 954 F.3d 1125, 1129 (8th Cir. 2020) ("The official-capacity claim against Korte is essentially a claim against the county itself.").  Because Plaintiffs have also sued the County directly, the Court recommends that all claims against Defendants in their official capacities be dismissed without prejudice as redundant of Plaintiffs' claims against the County.  *See King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *cf. Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (noting repeated criticism of "the filing of 'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant").

### b.  Municipal Claims

As to the County, "[§] 1983 liability for a constitutional violation may result from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View*, 709 F3d 1201, 1214 (8th Cir. 2013) (quotations and citations omitted); *accord Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016); *see also Monell*, 658 U.S. at 691, 694; *City of Canton*, 489 U.S. at 387-389.

### i.    *Monell*: Out-of-Cell Exercise Policies

*Policy or Custom.*  The terms "policy" and "custom" are not used "interchangeably when conducting a *Monell* analysis."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) ("Policy and custom are not the same thing.").  "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Mettler*, 165 F.3d at 1204 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (a policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question").

In contrast,

> a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (quotation omitted); *see also, e.g.*, *Mettler*, 165 F.3d at 1204; *Ware*, 150 F.3d at 880.

There appears to be no real dispute that Plaintiffs have sufficiently alleged the existence of out-of-cell exercise policies by the County that restrict Plaintiffs' access to the

Jail's gyms. *See, e.g.*, Am. Compl. ¶¶ 46-57, 77, 128-36, 143-45; *see also* Defs.' Mem. in Supp. at 23 (referencing "Jail's exercise policies"). Plaintiffs in fact identify the out-of-cell exercise restrictions as policies. Am. Compl. ¶¶ 130 ("From March 19, 2020 through July 5, 2021, Sherburne County Jail's policy was to completely disallow Plaintiffs from exercising anywhere outside of their cells despite Sherburne County Jail having the ability to allow Plaintiffs to exercise in the numerous and available designated exercise facilities at the Jail."), 131 ("From July 6, 2021 through the present, it is Sherburne County Jail's policy to completely disallow Plaintiffs from exercising anywhere outside of their cells for more than two hours per week despite Sherburne County Jail having the ability to allow Plaintiffs to exercise in the numerous and available designated exercise facilities at the Jail for at least 7 hours per week on a per-inmate basis.").

Plaintiffs also refer to "customs, patterns, or practices" in the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 137-39, 141; *see also, e.g.*, Am. Compl. ¶¶ 104, 143. Defendants assert that Plaintiffs have failed to allege sufficient facts identifying the existence of a County custom regarding out-of-cell exercise. The Court agrees. It is true that a plaintiff need not "specifically plead the existence of an unconstitutional . . . custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). "When a complaint is filed a plaintiff may not be privy to the facts necessary to accurately describe or identify any . . . customs which may have caused the deprivation of a constitutional right." *Doe*, 340 F.3d at 614. But, "[a]t a minimum, a complaint must allege facts which would support the existence of an unconstitutional . . . custom." *Id.* There

must be allegations "by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional . . . custom" of the municipality. *Id.*; *see also Crumpley-Patterson*, 388 F.3d at 591.

"[P]roving the existence of a custom requires a plaintiff to show prior incidents of factually similar unconstitutional conduct." *Marks v. Doe 1*, 528 F. Supp. 3d 1008, 1013 (D. Minn. 2021) (citing *Mettler*, 165 F.3d at 1205). Fundamentally, Plaintiffs have not alleged facts from which it could plausibly be inferred that there was a widespread, persistent *pattern* of restricting out-of-cell exercise by County employees. Plaintiffs have not, for example, alleged other incidents in which their out-of-cell exercise was restricted prior to the events in question. *See, e.g.*, *Marks*, 528 F. Supp. 3d at 1014; *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 837-38, 840-42 (D. Minn. 2021); *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 941-42 (D. Minn. 2021). Plaintiffs simply refer back to their grievances regarding the out-of-cell exercise restrictions at issue here, Am. Compl. ¶¶ 111-13, and boilerplate allegations as to the existence of "customs, patterns, or practices" regarding out-of-cell exercise, Am. Compl. ¶¶ 137-41. This is not sufficient. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013); *see also D. B. v. Hargett*, No. 13-cv-2781 (MJD/LIB), 2014 WL 1371200, at *5-7 (D. Minn. Apr. 7, 2014); *Triemert v. Washington Cty.*, No. 13-cv-1312 (PJS/JSM), 2013 WL 6729260, at *11-12 (D. Minn. Dec. 19, 2013). Because Plaintiffs have not alleged sufficient facts from which it could be plausibly inferred that the restriction of their out-of-cell exercise time resulted from a County custom, the Court recommends dismissing Count 3 to the extent Plaintiffs have

alleged constitutional violations based on a County custom regarding the restriction of out-of-cell exercise.

*Deliberate Indifference.*[6]  Regardless of their constitutional grounding, conditions-of-confinement claims are evaluated under a deliberate-indifference framework.  *See, e.g.*, *Farmer*, 511 U.S. at 834 (Eighth Amendment); *Wilson*, 501 U.S. at 303 (Eighth Amendment); *Walton*, 752 F.3d at 1117 (Fourteenth Amendment); *see also Bell*, 441 U.S. at 535-36 (Due Process Clause).  Unlike the subjective inquiry of deliberate indifference for individuals, which requires the defendant to both be aware of facts from which the inference could be drawn that a substantial risk of harm exists and draw that inference, the inquiry for deliberate indifference with respect to municipalities is objective.  *See Farmer*, 511 U.S. at 837, 840-41; *City of Canton*, 489 U.S. at 390; *see also Walton*, 752 F.3d at 1117.  "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights."  *Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005).  In light of *Wishon*, 678 F.2d at 449, *Campbell*, 623 F.3d at 507, and *Phillip*, 320 F.3d at 847, the Court concludes that Plaintiffs have alleged sufficient facts that the total and near-total restriction of their ability to exercise outside of their cells pursuant to the County's out-of-cell exercise

---

[6] Plaintiffs have pleaded and the parties have argued Count 3 as a claim for deliberate indifference.  *See* Am. Compl. ¶¶ 136, 141; *see also* Defs.' Mem. in Supp. at 23; Pls.' Mem. in Opp'n 50-51; Defs.' Reply at 19-20.  *But see, e.g.*, *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) ("Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability." (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007)); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404-05 (1997)); *cf. Monell*, 436 U.S. at 690 ("[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution.").

policies violated their constitutional rights and that these policies were the moving force behind the alleged violations.

This case may ultimately turn on whether the County's out-of-cell exercise policies are reasonably related to a legitimate purpose. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78,89-91 (1987); *Bell*, 441 U.S. at 538-39; *Stearns*, 957 F.3d at 908-09. As the Supreme Court observed in *Bell*,

> the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 547-48.

The County has proffered evidence that the Jail's out-of-exercise policies were in response to the COVID-19 pandemic and developed in consultation with the Minnesota Department of Health. *See, e.g.*, Defs.' Mem. in Supp. at 5; *see also* Defs.' Reply at 19-20. The County has also proffered evidence that it made other recreational opportunities available and increased gym access as conditions changed and based on guidance from the Minnesota Department of Health. *See, e.g.*, Defs.' Mem. in Supp. at 5, 12. As stated above, however, the Court has exercised its discretion not to consider this information. *See supra* Section III.B. In any event, while all of this information may well be relevant to a

22

determination of the *merits* of Plaintiffs' *Monell* claim regarding the County's out-of-cell exercise policies, it is not relevant to the determination of whether Plaintiffs have stated a claim. Therefore, the Court recommends that Defendants' motion be denied as to Count 3 against the County in connection with the County's out-of-cell exercise policies.

### ii.    *City of Canton:* Failure to Train

In Count 4, Plaintiffs allege the County failed to provide proper training "relating to the minimum amount of physical exercise inmates must be permitted to engage in while in the County's custody." Am. Compl. ¶ 148. Defendants assert that the County had no notice the Jail's gym policies were unconstitutional.

"[A] local government may be subject to § 1983 liability for 'inadequate training of its employees.'" *Parrish*, 594 F.3d at 997 (quoting *City of Canton*, 489 U.S. at 388). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a [municipality] be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389; *see, e.g.*, *Parrish*, 594 F.3d at 997; *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Brown*, 520 U.S. at 409). "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" *Id.* (quoting *Brown*, 520 U.S. at 407). "Without notice that a course of training is deficient

23

in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Accordingly,

> [i]t is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can be reasonably be said to have been deliberately indifferent to the need."

*Andrews*, 98 F.3d at 1076 (quoting *City of Canton*, 489 U.S. at 390); *accord Parrish*, 594 F.3d at 997-98. As such, "[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson*, 709 F.3d at 1216. A failure-to-train claim "can[not] succeed without evidence the municipality received notice of a pattern of unconstitutional acts committed by its employees." *Id.* at 1216-17 (quotation omitted); *accord Garcia v. City of New Hope*, 984 F.3d 655, 670 (8th Cir. 2021); *Parrish*, 594 F.3d at 997; *Andrews*, 98 F.3d at 1076. "[A] municipality's liability 'is at its most tenuous where a claim turns on a failure to train.'" *Garcia*, 984 F.3d at 670 (quoting *Connick*, 563 U.S at 61).

Plaintiffs have not alleged sufficient facts showing the County had reason to believe before the events giving rise to this litigation that its training on prisoner exercise was inadequate. *See Garcia*, 984 F.3d at 670 ("Other than the events at issue here, Garcia cites to no facts that would have given the City notice of a potential training inadequacy."); *Atkinson*, 709 F.3d at 1217 ("Atkinson has presented no evidence indicating the city had reason to believe, before the events giving rise to this case, that its training or supervision

of Sanders was inadequate."); *Szabla*, 486 F.3d at 392 ("The evidence does not show that Brooklyn Park had a history of police officers unreasonably using canines to apprehend suspects without advance warning, such that the need for additional training or supervision was plain."). Plaintiffs rely on allegations that the County and its employees generally established policies regarding administration of the Jail and such policies were the "moving force" behind the restriction on out-of-cell exercise, Am. Compl. ¶¶ 132-36; the fact that the County regularly has individuals in custody at the Jail, Am. Compl. ¶ 150; and the restrictions on out-of-cell exercise at issue in this litigation, Am. Compl. ¶¶ 138-42, 148-54, to show that the County was "aware of the need for more and different training on the constitutional minimums of physical exercise," Am. Compl. ¶ 151. *See* Pls.' Mem. in Opp'n at 53. But, these facts do not suggest a pattern of unconstitutional conduct. *See Atkinson*, 709 F.3d at 1216-17. They do not show that, *prior to the events in question*, the County had reason to believe there was a potential training inadequacy regarding prisoner exercise. *See Garcia*, 984 F.3d at 670-71; *Atkinson*, 709 F.3d at 1216-17. Without sufficient facts showing that the County was on notice its training regarding prisoner exercise was inadequate, Plaintiffs have failed to state a claim for failure to train. Therefore, the Court recommends that Count 4 be dismissed without prejudice in its entirety.

### E. Unsanitary Cell Conditions

Defendants assert that Plaintiffs have not alleged facts showing that the alleged unsanitary cell conditions constituted a constitutional violation.[7]

"[I]nmates are entitled to reasonably adequate sanitation." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989); *accord Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1028 (8th Cir. 2003) (per curiam). The Eighth Circuit Court of Appeals has described the length of time an individual "was subjected to the harsh confinement[ to be] a crucial factor. Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard*, 887 F.3d at 137 (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)); *see Owens*, 328 F.3d at 1027; *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957-58 (8th Cir. 1994). At the same time, "[w]hile the length of time a prisoner must endure an unsanitary cell is undoubtedly one factor in

---

[7] In their opposition, Plaintiffs contend their unsanitary-cell claims also "include claims related to overcrowding in their cells." Pls.' Mem. in Opp'n at 42. The paragraphs of the Amended Complaint cited by Plaintiffs in support of this assertion are factual allegations in support of their out-of-cell exercise claims, not an overcrowding claim. *See, e.g.*, Am. Compl. ¶¶ 44 ("The Defendants house Plaintiffs in cells that have a 4-foot by 6-foot usable space. Within this small space, each cell has an institutional sink, toilet, desk, and bunk beds."), 56 ("From March 19, 2020 through July 6, 2021, Plaintiffs were unable to exercise in the designated exercise areas within the Jail and were also prohibited from exercising in the day room, leaving only the inmates' cells for permissible exercise. However, the Plaintiffs' cells are very small, and, especially when double-bunked, Sherburne County Jail inmates do not have enough space to exercise safely and effectively." (*see supra* n.1)), 58 ("Plaintiffs' cells at the Jail are extremely small, and Plaintiffs cannot adequately exercise in their cells due to the lack of space, especially when double-bunked."), 67 ("Considering that Plaintiffs are permitted, and often forced, to be in close contact with one another in the day space areas, gyms converted into movie rooms, and their cells, the Jail's stated concern with close contact in areas designated for exercise is pretextual and insincere."). Counts 1 and 2, which contain the unsanitary-cell claims refer to "Black Mold, urine, and fecal matter," Am. Compl. ¶¶ 119, 125, not overcrowding. "[A] party cannot amend its pleadings with a memorandum of law." *ResCap Liquidating Tr. v. U.S. Bank, N.A.*, No. 16-cv-4067 (PAM/HB), 2017 WL 2437242, at *6 (D. Minn. June 5, 2017); *see also Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." (quotations and citations omitted)).

the constitutional calculus, the degree of filth is surely another . . . ." *Whitnack*, 16 F.3d at 958. "[T]he length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases." *Id.*

Lee is alleged to have been subjected to mold in the air vent of his segregation cell as well as "food, urine, and fecal matter on the floors" of this area for the "several days" he was in segregation. Am. Compl. ¶¶ 80-81. While Plaintiffs are not required to plead detailed factual allegations, there must be sufficient facts alleged for the Court to draw a reasonable inference that the cell conditions at issue were not just unsanitary, but unconstitutionally so. *See Iqbal*, 556 U.S. at 678-80; *Twombly*, 550 U.S. at 555-56. The Amended Complaint does not allege facts from which the Court could reasonably infer the level or degree of mold and waste (human and otherwise) present in Lee's segregation cell. *Cf., e.g.*, *Taylor v. Rojas*, 141 S. Ct. 52, 53 (2020) (per curiam) ("The first cell was covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet." (quotation omitted)); *Owens*, 328 F.3d at 1026 ("Owens had to sleep on a mattress on the floor approximately a foot and a half away from the toilet. When his cellmate would use the toilet at night, urine would splash onto Owens and his blankets.").

Plaintiffs rely on cases outside the Eighth Circuit to support the proposition that allegations of exposure to mold alone are sufficient to state a claim, citing *Smith v. Leonard*, 244 F. App'x 583 (5th Cir. 2007) (per curiam); *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714 (D. Conn. Feb. 2, 2018); *Davis v. Williams*, 216 F. Supp. 3d 900 (N.D.

Ill. 2016).  Each of these cases is distinguishable as something more than the mere existence of mold was alleged.

In *Smith*, the plaintiff alleged he experienced physical symptoms as a result of the mold.  *Smith*, 244 F. App'x at 584 ("headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue").   While the Amended Complaint alleges that "[p]rolonged exposure to Black Mold is known to have disastrous health consequences that can include but are not limited to nausea, vomiting, and bleeding in the lungs," Am. Compl. ¶ 86, there are no allegations that any of Plaintiffs, including Lee, experienced any symptoms as a result of the exposure.[8]  *See, e.g.*, *Ware v. St. Louis City Justice Ctr.*, No. 4:20-cv-01065-AGF, 2020 WL 7240445, at *8 (E.D. Mo. Dec. 9, 2020) ("Plaintiff's bare allegation of mold being present in his cell, without more, does not establish an unconstitutional condition of confinement."); *Kingcade v. Holder*, No. 1:19-cv-165-NAB, 2020 WL 495131, at *3 (E.D. Mo. Jan. 30, 2020) ("At most, plaintiff's allegations establish that there was mold and/or mildew in the facility.  However, mere exposure to mold or mildew does not amount to an excessive risk to health or safety, as required to state a claim premised upon unconstitutional conditions of confinement."); *Washington v. Heartline*, No. 4:10-CV-04189, 2011 WL 4403628, at *1 (W.D. Ark. Sept. 21, 2011) ("Plaintiff argues that he could have been exposed to toxic mold.  A remote future possibility of harm from the mold is not actionable.").

---

[8] And, as will be discussed momentarily, there are no allegations from which it can be plausibly inferred that any of Plaintiffs experienced "prolonged exposure."

In *Davis*, the mold-related claim was one for the deprivation of cleaning supplies in conjunction with other unhygienic conditions. 216 F. Supp. 3d at 904, 909-10. The plaintiff alleged, due to insufficient quantities of disinfectant provided by the prison, he could not adequately clean his cell and shower area and "the resultant toxic mold c[ould] result in neurological damage and cancer." *Id.* at 904. Combining these allegations with other allegations regarding conditions at the prison, including but not limited to birds being allowed "to fly freely throughout the prison's living units and cafeteria," "mice roam[ing] in and out of cells regularly," and "massive infestations of roaches and spiders in the inmates' cells and shower area" which "resulted in two roaches being removed from [the plaintiff's] right ear canal," the district court found that the plaintiff had stated a claim for unsanitary conditions of confinement. *Id.* (quotations omitted). Plaintiffs have not alleged they were deprived of adequate cleaning supplies. Nor have they alleged a collection of unsanitary conditions of such a level or degree that it could plausibly be inferred that the conditions of their confinement are unconstitutional.

Similar to Lee, the plaintiff in *Abrams* "alleged the presence of the hazardous condition of 'black mold' on the air vent in his segregation cell," where he was housed for 17 days. 2018 WL 691714, at *13-14. A corrections officer "dismissed his complaint about black mold in the segregation unit by telling him, 'It comes off with wet tissue.'" *Id.* at *15. The claim was allowed to proceed with respect to this officer in his individual capacity. *Id.* There is no allegation that any of Defendants expressly dismissed Lee's concerns and Lee's alleged exposure was of much shorter duration. There are no allegations in the Amended Complaint from which to infer that Lee (or any of Plaintiffs)

was subject to the alleged unsanitary conditions for an extended period of time.  *Compare, e.g.*, *Goldman v. Forbus*, 17 F. App'x 487, 488 (8th Cir. 2001) (per curiam) (two nights); *Smith*, 87 F.3d at 268 (four days); *Whitnack*, 16 F.3d at 958 (less than 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (11 days); *White v. Crow Ghost*, 456 F. Supp. 2d 1096, 1105-06 (D. N.D. 2006) (four days), *with Owens*, 328 F.3d at 1027 (five weeks); *Howard*, 887 F.2d at 137 (two years); *Lewis v. Jackson Cty.*, No. 4:21-cv-00230-RK, 2021 WL 5867649, at *4 (W.D. Mo. Dec. 10, 2021) (several months); *cf. Stearns*, 957 F.3d at 904-05 (eight days in transport vehicle).

The Court recognizes that the Eighth Circuit has "noted the need to be 'especially cautious about condoning conditions that include an inmate's proximity to human waste.'" *Owens*, 328 F.3d at 1027 (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)). Taking the allegations in the Amended Complaint as true for purposes of the instant motion, the Court does not doubt that the "several days" Lee spent in segregation were unpleasant and uncomfortable.  But, absent facts showing the level or degree to which the mold and waste were present in Lee's cell and in light of the short period of time in which Lee was subject to the alleged unsanitary conditions, the Court concludes that Plaintiffs have failed to state a claim with respect to unsanitary cell conditions under the Eighth and Fourteenth Amendments.  Therefore, the Court recommends that Defendants' motion be granted in part as to the claims for unsanitary cell conditions in Counts 1 and 2, and that these claims be dismissed in their entirety without prejudice.

### F.  Summary of Claims

In sum, the Court recommends that Counts 1 and 2 as well as all individual Defendants be dismissed without prejudice. For reasons discussed throughout Section III.D.2, Counts 3 and 4 can only be brought against the County.  Counts 1 and 2 are therefore the only claims conceivably brought against Defendants individually.  The Court has concluded that Plaintiffs have failed to state a claim with respect to unsanitary cell conditions, *see supra* Section III.E, and against Defendants in their individual capacities regarding the out-of-cell exercise policies, *see supra* Section III.D.1.  The Court has also concluded that any claims against Defendants in their official capacities are redundant of the claims against the County.  *See supra* Section III.D.2.a.  Thus, in the interests of clarity and having recommended that the claims against Defendants in both their individual and official capacities be dismissed, the Court recommends that Counts 1 and 2 be dismissed in their entirety.

As to the County, the Court further recommends that Count 3 be dismissed without prejudice to the extent Plaintiffs assert the alleged constitutional violations resulted from a County custom regarding out-of-cell exercise and Count 4 be dismissed without prejudice in its entirety.  The sole surviving claim is Plaintiffs' *Monell* claim in Count 3 against the County in connection with its out-of-cell exercise policies.

### G. Specific Relief:  Compensatory Damages Under the PLRA, Injunctive Relief, and Punitive Damages

Defendants move for dismissal of Plaintiffs' request for compensatory damages, injunctive relief, and punitive damages.  Defendants assert Plaintiffs have failed to allege

more than *de minimis* physical injuries, precluding recovery of compensatory damages under the Prisoner Litigation Reform Act ("PLRA").  *See* 42 U.S.C. § 1997e(e); *McAdoo v. Martin*, 899 F.3d 521, 525-27 (8th Cir. 2018); *Sisney v. Reisch*, 674 F.3d 839, 842-43 (8th Cir. 2012); *Royal v. Kautzky*, 375 F.3d 720, 722-24 (8th Cir. 2004).  Defendants additionally assert that Plaintiffs' claims for injunctive relief are moot because the Jail's gyms have now gone back to their regular schedule of being open five days per week.  Lastly, Defendants assert that Plaintiffs have not alleged sufficient facts that Defendants acted with the requisite evil motive, intent, or reckless or callous indifference to Plaintiffs' federally protected rights to recover punitive damages.  *See, e.g.*, *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Schaub*, 638 F.3d at 922.

Plaintiffs respond that they have requested more than just compensatory damages and, in any event, they have alleged sufficient physical injuries to recover compensatory damages under the PLRA.  Plaintiffs further respond that their request for injunctive relief is not moot as the Jail has recently instituted additional lockdowns in response to COVID-19, and "the Jail's normal policy of only providing inmates the opportunity to exercise outside their cells for five hours per seven days is an unconstitutional restriction of [their] right to exercise under the Eighth Amendment."  Pls.' Mem. in Opp'n at 56.  Finally, Plaintiffs respond that they have alleged sufficient facts to show Defendants acted with the requisite evil motive or reckless indifference.

As stated above, the Court has concluded that Plaintiffs have stated a *Monell* claim against the County in connection with its out-of-cell exercise policies.  With the exception

of punitive damages against the County, the Court finds Defendants' request to preclude the availability of certain kinds of relief at this stage of the proceedings to be premature.

### 1. Compensatory Damages Under the PLRA

"[Section] 1997e(e) is merely a limitation on damages, not an element of [a] § 1983 lawsuit." *Kahle v. Leonard*, 563 F.3d 736, 742 (8th Cir. 2009) (quotation omitted). The PLRA's restriction on compensatory damages precludes recovery "for mental or emotional injury . . . without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiffs have alleged both physical injuries and emotional distress as a result of the County's out-of-cell exercise policies. "No clear line divides de minimis injuries from others." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Discovery will reveal the nature and extent of damages, if any, that may be available to Plaintiffs. *See McAdoo*, 899 F.3d at 525 (8th Cir. 2018) ("Thus, to recover more than nominal damages under the [PLRA], a prisoner must allege or prove more than mental or emotional injury. We interpret the PLRA to require more than a de minimis physical injury.").

### 2. Injunctive Relief

"[M]ootness applies to both cases as a whole and particular requests for relief. Accordingly, changed circumstances can moot a request for injunctive relief without mooting the whole case." *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 376 n.2 (D. Minn. 2020) (citation omitted) [hereinafter *CAIR-MN*]. "A claim for injunctive relief may become moot if challenged conduct permanently ceases." *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998); *accord CAIR-MN*, 497 F. Supp. 3d at 376. "Generally, when there is

no 'reasonable expectation that the wrong will be repeated,' a claim for injunctive relief is moot." *CAIR-MN*, 497 F. Supp. 3d at 376-77 (quoting *Comfort Lake Ass'n*, 138 F.3d at 354). "Mere voluntary cessation of a challenged action does not moot a case. Rather a case becomes moot 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also Hawse v. Page*, 7 F.4th 685, 692 (8th Cir. 2021) ("Where it is absolutely clear that the County's disputed conduct could not reasonably be expected to recur, an action challenging a superseded public health order is moot."). "The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness." *Strutton*, 668 F.3d at 556; *accord Let Them Play MN v. Walz*, No. 21-cv-79 (ECT/DTS), ___ F. Supp. 3d ____, 2021 WL 3741486, at *6 (D. Minn. Aug. 24, 2021). "Although this is a heavy burden, it is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." *Let Them Play MN*, 2021 WL 3741486, at *6 (quotation omitted).

Defendants maintain that the Jail's gyms are now open five days per week. Defs.' Mem. in Supp. at 26. Plaintiffs counter that they have been subjected to at least one additional period of restriction in September 2021. Pls.' Mem. in Opp'n. at 55. The Court concludes that Defendants have not met their burden to show that there is no reasonable expectation Plaintiffs will not be again subject to the out-of-cell exercise policies. Based

on the record before the Court, which is uncontradicted by Defendants, Plaintiffs appear to have already been again subjected to the County's out-of-cell exercise policies.[9]

### 3. Punitive Damages

The Court has recommended dismissal of all claims and the individual Defendants other than the *Monell* claim in Count 3 against the County regarding the out-of-cell exercise policies. Punitive damages are not available against a municipality. *See, e.g.*, *Graham*, 473 U.S. at 167 n.13 (1985) ("[P]unitive damages are not available under § 1983 from a municipality."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). As punitive damages are not available to Plaintiffs in connection with their sole remaining claim, the Court recommends that Defendants' motion be granted to the extent the Amended Complaint seeks punitive damages against the County.

[Continued on next page.]

---

[9] This case is distinguishable from those cases challenging COVID-19 restrictions based on since-rescinded executive orders and policies whose authority flowed from those rescinded executive orders. *See, e.g.*, *Hawse*, 7 F.4th at 692; *Let Them Play MN*, , 2021 WL 3741486, at *5-6. There is no contention that the County's out-of-cell exercise policies were issued pursuant to a since-rescinded executive order.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' Amended Motion to Dismiss, ECF No. 16, be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Counts 1, 2, and 4 be **DISMISSED WITHOUT PREJUDICE** in their entirety;

2. Count 3 be **DISMISSED WITHOUT PREJUDICE** to the extent Plaintiffs assert the alleged constitutional violations resulted from a County custom regarding out-of-cell exercise;

3. All individual Defendants be **DISMISSED WITHOUT PREJUDICE**;

4. Any request for punitive damages against the County be **DISMISSED WITH PREJUDICE**; and

5. The remainder of Defendants' motion be **DENIED**.


Dated: February____1____, 2022          _____*s/ Tony N. Leung*_____
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Brenizer et al. v. County of Sherburne et al.*
                                         Case No. 21-cv-1301 (DSD/TNL)


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).