```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               CIVIL NO. 21-1301(DSD/TNL)
```

Kyle-William Brenizer; Travis R.
Fairbanks; Johnnie L. Haynes; Montez T.
Lee; Steven Lincoln; Abdiweli Jama; All
Inmates of the Sherburne County Jail,

      Plaintiffs,

v.                                     **ORDER**

The County of Sherburne,

      Defendant.

This matter is before the court upon the motions for class certification and appointment of class representatives and class counsel by plaintiffs Kyle-William Brenizer, Travis R. Fairbanks, Johnnie L. Haynes, Montez T. Lee, Steven Lincoln, Abdiweli Jama, and all inmates at the Sherburne County Jail. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motions.

**BACKGROUND**

This putative class action brought under 42 U.S.C. § 1983 arises from COVID-19 policies implemented at the Sherburne County Jail (Jail) between March 19, 2020, and the present, which have restricted plaintiffs' ability to exercise. The

merits of the underlying claims are not at issue at this stage of the case, and the court will set forth only those facts needed for context and to decide the motion.

The named plaintiffs were inmates at the Jail during various times relevant to this suit: Brenizer from August 21, 2020, to July 2022; Fairbanks from March 4, 2021, to January 21, 2022; Haynes from October 3, 2019, to March 30, 2020; Lee from February 24, 2021, to March 1, 2022; Jama from February 24, 2021, to May 2022; and Lincoln from February 14, 2020, to July 1, 2022. Second Am. Compl, ECF No. 58, ¶¶ 125-131. None of the named plaintiffs are currently incarcerated at the jail, and therefore are no longer subject to the policies and customs they challenge.

Before the COVID-19 pandemic, inmates at the Jail were generally allowed to exercise in the gym for an hour each day, five days per week. ECF No. 66-5, at 28. Inmates were also permitted to walk around the housing unit dayroom and upper tier as another form of exercise and to obtain an "In-Cell Workout" program from the jail program coordinator.[1] Id. at 27-28. Inmates were not allowed, however, to exercise in the unit

---

[1] The Jail does not have outdoor recreation areas for inmates, so distanced outside exercise is not an option. See ECF No. 67, at 31-32.

2

dayroom.  See ECF No. 69-3.  On March 19, 2020, the Jail began restricting out-of-cell inmate recreation time to limit human interaction and, thus, the spread of the virus.  See ECF No. 1-1, at 3, 5.  In doing so, the jail followed the recommendations of the Minnesota Department of Health (MDH).  See Frank Decl. Ex. 2.  Plaintiffs contend that although they were permitted to exercise in their cells, the cells are too small and the floors too slippery to allow for meaningful exercise in that setting.

Plaintiffs ultimately filed this suit pro se on May 28, 2021, claiming that they were deprived of their right to exercise beginning on March 19, 2020.  See ECF No. 1. Plaintiffs later secured counsel, who filed an appearance in June 2021.  ECF No. 5.

On July 6, 2021, the Jail began once again permitting inmates to exercise outside of their cells two days per week in designated recreation areas, subject to various COVID-19 precautions.  ECF No. 66-7.  On August 16, 2021, the Jail increased out-of-cell recreation time from two to five days per week for eligible inmates.  ECF No. 69-2, at 16.  The option to exercise in their cells remained available to inmates throughout this period.  Id.  Consistent with MDH guidelines, out-of-cell exercise was not permitted from September 7, 2021, to September

3

24, 2021, and December 15, 2021, to January 19, 2022, due to COVID-19 outbreaks at the Jail. Frank Decl. ¶ 12.

Plaintiffs contend that the Jail failed to allow inmates access to the gym five days per week despite the stated policy, and that it became the custom at the jail to arbitrarily suspend out-of-cell exercise. Second Am. Compl. ¶¶ 56-58. They also contend that the Jail imposed numerous multi-week lockdowns, which were unnecessary on a facility-wide basis, and which resulted in only one hour per day of out-of-cell activity. Id. ¶ 64.

The named plaintiffs and other inmates at the Jail submitted grievances about the lack of out-of-cell exercise allowed after August 16, 2021. See, e.g., ECF No. 66-6; ECF No. 69-4; ECF No. 69-6; ECF No. 69-7, at 1; ECF No. 69-8; ECF No. 69-9; see also Frank Decl. ¶ 9. The named plaintiffs did not take full advantage of exercise time, however, even after it was increased to five days per week. See id. Exs. 10-15. They nevertheless claim that the policies and customs implemented by the Jail violated Minnesota administrative rules requiring inmates to have access to "recreational opportunities and equipment, including seven hours of physical exercise or recreation outside the cell and adjacent dayroom areas per

4

week." Minn. Admin. R. 2911.3100, subdiv. 7A.

On September 20, 2022, plaintiffs filed a second amended class action complaint against Sherburne County alleging that the Jail's policies and customs limiting out-of-cell exercise during the COVID era unlawfully deprived them of their right to sufficient exercise under the Eighth and Fourteenth Amendments, and in violation of Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). See ECF No. 58. Plaintiffs allege that the deprivation of their constitutional rights caused them to suffer from weight gain or weight loss, mental and emotional stress, muscle atrophy, and/or body aches and pains. See id. ¶ 112; Bostrom Decl. Exs. 2-7. Plaintiffs seek damages and injunctive relief requiring the Jail to allow inmates to exercise at least seven hours per week, subject to reasonable exceptions to be determined by the court. ECF No. 58, at 30-31. Plaintiffs now move for certification of three classes and one subclass as follows:

> (1) Class A.1: All inmates who were in the custody of Sherburne County Jail at any time between March 19, 2020, and July 5, 2021.
>
> (2) Subclass A.2: All members of Class A.1 who suffered physical injury as a result of Defendant's unconstitutional anti-exercise policies.
>
> (3) Class B: All members inmates who were in the

5

>     custody of Sherburne County Jail at any time between July 6, 2021, and August 16, 2021.
>
>     (4) Class C: All members inmates who were in the custody of Sherburne County Jail at any time between August 17, 2021, and the present.[2]

ECF Nos. 60, 65, 75. Sherburne County opposes the motion.

**DISCUSSION**

**I.   Class Certification Standard**

"A district court has broad discretion in determining whether to certify a class[.]" Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1399 (8th Cir. 1983) (citation omitted). The plaintiff bears the burden to show that the class should be certified. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). The court "must undertake a rigorous analysis to ensure that the requirements of Rule 23[] are met." Bennett v. Nucor Corp., 656 F.3d 802, 814 (8th Cir. 2011) (citation and internal quotation marks omitted).

---

[2] After the parties fully briefed the motion, plaintiffs filed a letter requesting amended class definitions to address some of the arguments made by Sherburne County in opposition to the motion. ECF No. 84. The court will not permit new class definitions at this stage of the litigation. The case has been ongoing since 2021 and plaintiffs have filed two amended complaints. Plaintiffs have had ample time before now to assess their proposed class definitions and make appropriate changes. It would be unfair and inefficient to grant plaintiffs' late request for amended class definitions.

6

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-part analysis to determine whether class certification is appropriate. Plaintiffs must first satisfy all four requirements of Rule 23(a), showing that: (1) joinder of all members is impractical because the class is too numerous, (2) there are questions of fact or law that are common to the class, (3) the claims or defenses raised by the representative parties are typical of those of the class, and (4) the representative parties will protect the interests of the class fairly and adequately. Donaldson v. Pillsbury Co., 554 F.2d 825, 829 (8th Cir. 1977). If all four elements are met, the court must then determine if at least one of the three subdivisions of Rule 23(b) is also met. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010).

**II. Class Definition**

Before considering the explicit requirements set forth in Rule 23, the court must be satisfied that the proposed class is ascertainable. Brown v. Wells Fargo & Co., 284 F.R.D. 432, 444 (D. Minn. 2012); see also Powell v. Nat'l Football League, 711 F. Supp. 959, 966 (D. Minn. 1989) ("For implicit requirements of Rule 23(a), the Court must find ... the existence of a precisely defined class...."). Specifically, the plaintiff "must

7

establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be given." Gardner v. Equifax Info. Servs., LLC, No. 06-cv-3102, 2007 WL 2261688, at *3 (D. Minn. Aug. 6, 2007). "[A] class definition should be based on objective criteria so that class members may be identified without individualized fact finding." In re OnStar Contract Litig., 278 F.R.D. 352, 373 (E.D. Mich. 2011); see also Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537-38 (6th Cir. 2012) (holding that the class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class").

The Jail argues that Subclass A.2 and Class C are not ascertainable.[3]  As to Subclass A.2, the Jail argues that the class definition is too vague because it fails to identify what the term "physical injury" means.  The court disagrees.  The meaning of "physical injury" is self-evident.  That is, in order to be a member of Subclass A.2 a plaintiff must have been injured in a physical manner by the policies at issue. Determining whether an individual plaintiff was in fact injured due to the policies would likely require an individualized

---

[3] There is no dispute that Classes A.1 and B are adequately defined.

8

inquiry, but does not defeat a finding that the class is adequately defined.

The Jail also argues that Class C is not ascertainable because the definition includes a date range from August 16, 2021, to "the present." The court agrees. An end date of "until resolution" or "until the present" creates "a moving target and presents potential case management problems." Taylor v. Autozone, Inc., No. 10-cv-8125, 2011 WL 2357652, at *1 (D. Ariz. June 14, 2011). Indeed, leaving the end date open makes the class an ever-evolving entity with potential new members joining each day. As such, the Class C definition is not ascertainable.

**III. Rule 23(a) Requirements**

To succeed on a motion for class certification, plaintiffs must first demonstrate that they meet the threshold criteria of numerosity, commonality, typicality, and adequacy as described above.

    **A.  Numerosity**

To satisfy this element, the class must be so numerous that joinder is impractical. Fed. R. Civ. P. 23(a)(1). Impracticality is not a rigidly defined concept and it is considered on a case-by-case basis. See Parkhill v. Minn. Mut.

9

Life Ins. Co., 188 F.R.D. 332, 337 (D. Minn. 1999). The court considers the number of persons in the proposed class and may also consider "any other factor relevant to the practicability of joining all the putative class members." Paxton v. Union Nat'l Bank, 688 F.2d 552, 559-60 (8th Cir. 1982). Because plaintiffs propose three separate classes and one subclass, the court will consider whether each class and subclass satisfies the numerosity requirement. Clayborne v. Omaha Pub. Power Dist., 211 F.R.D. 573, 589 (D. Neb. 2002).

As to Classes A.1, B, and C, plaintiffs allege that each inmate housed at the Jail during the specific date ranges identified in the complaint are putative class members. For Class A.1, the class could include as many as 1,700 inmates. Second Am. Compl. ¶ 31; ECF Nos. 70-71. Class B could include hundreds of inmates, as could Class C. See ECF No. 71. The court is persuaded that these numbers, even if smaller than anticipated, are sufficiently large to render case-by-case litigation impracticable. The number of possible class members falling in the ambit of Subclass A.2 is less clear given that we do not yet know how many of the larger Class A.1 suffered injuries as a result of the policies and customs at issue. The court is nevertheless inclined to conclude that the numerosity

10

requirement is satisfied for Subclass A.2 because separating the class from this case would be inefficient. Certainly, given the broader allegations, the subclass would likely have ample members to support class treatment. As a result, the court finds that the numerosity requirement is satisfied as to each class and subclass.

### B. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even when individual members of the class are not identically situated, if the legal question they share in common is related to the determination of the litigation, the commonality requirement is met. See DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citing Paxton, 688 F.2d at 561). Similarly, factual differences among individual claims will not defeat commonality provided that all putative class members seek a common remedy. See id. "When examining commonality, a court looks to 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" Khoday v. Symantec Corp., No. 11-cv-180, 2014 WL 1281600, at *15 (D. Minn. Mar. 13, 2014)

11

(quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

Here, Classes A.1, B, and C present common questions of fact and law. Specifically, plaintiffs allege that the Jail's policies and customs limiting out-of-cell exercise beginning on March 19, 2020, violated their constitutional right to exercise and exhibited a deliberate indifference to their fundamental rights. Leaving aside the merits of plaintiffs' claims for the moment, the court can discern no difference in proof or law that would defeat the commonality claim as to these classes. The claims under each Class definition will rise of fall based on the constitutionality of the policies at issue and will not require individualized assessments. Subclass A.2 is a different matter, however.

Proposed Subclass A.2 includes all members of Class A.1 "who suffered physical injury as a result of" the Jail's out-of-cell exercise policies. This definition therefore requires each Subclass A.2 member to establish injury and causation, which would effectively require mini trials for each possible subclass plaintiff. Under these circumstances, the required commonality is lacking for Subclass A.2. See Powers v. Credit Mgmt. Servs., Inc., 776 F.3d 567, 573 (8th Cir. 2015) (holding that

12

individualized inquiries defeat the commonality requirement of Rule 23).

### C. Typicality

Rule 23(a)(3) requires that claims of representative parties be "typical" of those of the class. Generally, typicality will be found where "the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." Paxton, 688 F.2d at 561-62. The typicality standard is "fairly easily met so long as other class members have claims similar to the named plaintiff." Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting DeBoer, 64 F.3d at 1174).

The named plaintiffs seek damages, a declaration that the Jail's policies and customs are unconstitutional, and injunctive relief enjoining the Jail from imposing the policies at issue. According to the Jail, the named plaintiffs lack standing to seek declaratory injunctive relief because they are no longer inmates at the Jail. The court agrees.

"To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006).

13

"For this reason, a claim for equitable relief altering the custodial conditions at a[n] ... institution normally becomes moot when the plaintiff is no longer subject to the challenged conditions." Id. Plaintiffs argue that they retain standing with respect to the requested declaratory and injunctive relief because the issues are capable of repetition yet evading review. But this exception to standing applies rarely and only when the following conditions are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also Whitfield v. Thurston, 3 F.4th 1045, 1047 (8th Cir. 2021). The named plaintiffs bear the burden of demonstrating that the exception applies. Abdurrahman v. Dayton, 903 F.3d 813, 817 (8th Cir. 2018). They have failed to do so. Even assuming that the first requirement is met, none of the named plaintiffs has shown that he is reasonably likely to be subject to the challenged policies and customs again.

"A fundamental requirement of maintaining a class action is that the representatives must be members of the classes or subclasses they seek to represent." Clayborne, 211 F.R.D. at

14

580. That requirement is lacking here as to declaratory and injunctive relief, which the named plaintiffs lack standing to pursue. And because the class definitions do not delineate between those seeking declaratory and injunctive relief and damages, the court must hold that the named plaintiffs are atypical of the proposed classes as a whole. See In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, (S.D.N.Y. 2018) ("[N]o class may be certified that contains members lacking Article III standing" and any "class must therefore be defined in such a way that anyone within it would have [Article III] standing.").

D.  **Adequacy**

To ensure that the interests of unnamed class members are fairly and adequately protected, Rule 23(a)(4) requires a finding that the named plaintiffs and their counsel will competently and vigorously pursue the action on behalf of all class members. Dirks v. Clayton Brokerage Co. of St. Louis, Inc., 105 F.R.D. 125, 133 (D. Minn. 1985). Further, the representatives' interests "must be sufficiently similar to those of the class that it is unlikely that their goals and interests will diverge." Parkhill, 188 F.R.D. at 339.

Here, although the court does not doubt that class counsel will adequately represent the class, the differences among the named plaintiffs and prospective class members, as discussed above, cast doubt over whether they are similar enough to meet the adequacy standard. Under these circumstances, the court cannot conclude that the named plaintiffs will adequately represent the class members' interests.

**IV. Rule 23(b) Requirements**

Even if plaintiffs could meet the Rule 23(a) requirements, they cannot do so with respect to Rule 23(b).

Once the requirements of Rule 23(a) have been satisfied, a party seeking class certification must then meet one of the three subdivisions of Rule 23(b). Plaintiffs argue that they meet the requirements of Rule 23(b)(2) and Rule 23(b)(3).

**A.  Rule 23(b)(2)**

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As already discussed, the named plaintiffs – and certainly at least some of the proposed class members – are not entitled to declaratory or

16

injunctive relief because they are no longer detained at the Jail and no longer subject to the policies at issue. As a result, Rule 23(b)(2) does not apply in this case.

**B.   Rule 23(b)(3)**

Rule 23(b)(3) permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id.

As a threshold matter, the Jail argues that plaintiffs waived any argument under Rule 23(b)(2) because the second amended complaint specifically identifies "Rule 23(b)(1) and/or Rule 23(b)(2)" as the basis for class certification. Second Am. Compl. ¶ 31. Although the Jail is correct that the complaint does not specifically mention Rule 23(b)(3), it does reference

17

the rule's relevant requirements in substance. See id. ¶¶ 40-41. Under these circumstances, the court cannot conclude that plaintiffs waived the rule's application. Thus, the court will turn to the relevant factors.[4]

### 1. Interest in Individually Controlling Actions

Plaintiffs argue that class members' interest in individually filing and controlling their own lawsuits is probably nonexistent given that they are unlikely to have resources to pursue their own actions and unlikely to secure counsel should they be inclined to do so. As such, this class action is, as a practical matter, the only avenue for relief. The court is persuaded by this argument and agrees that putative class members are probably disinclined to pursue these claims individually.

### 2. Difficulties in Managing Class Action

As discussed above, at least with respect to Subclass A.2, class treatment is unmanageable. Subclass A.2 requires individualized inquiries into injury and causation, which would result in inefficient mini trials.

---

[4] The court will not consider ongoing relevant litigation, as there appears to be none. Nor will the court consider the desirability of the form, as the Jail does not argue to the contrary.

18

In addition, as the Jail argues, even if the case were to proceed on a class-wide basis with respect to damages, plaintiffs have failed to present a workable damages formula. They maintain that damages can be readily awarded on a plaintiff-by-plaintiff basis by simply assigning a dollar amount of damages per day and then multiplying that amount by the number of days each prisoner was subject to the policies at issue. For those allegedly injured by the policies, plaintiffs recommend applying a multiplier to compensate for those injuries. Any plaintiffs falling within more than one class would have their separate damages added together.

But plaintiffs' formula is flawed because it does not consider all factors relevant to damages. See <u>Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.</u>, 339 F.3d 1001 (8th Cir. 2003) (affirming denial of class certification, in part, because damages would need to be determined on an individual case given applicable offsets to the damages model).

First, as to Subclass A.2, the extent of each class members' injury will require individual analysis to determine appropriate compensation. A multiplier is inadequate to establish appropriate damages given that the severity of injury – and thus the amount of compensation - will likely vary.

19

Second, as to all Classes, simply determining whether a class member was detained at the Jail for certain dates does not end the inquiry. Some class members may have been placed in segregation or may have been barred from using the recreation area for reasons other than the polices at issues. And some inmates, as we see from the named plaintiffs' exercise logs, would not have used the recreation area each day it was available to them. Determining how many days each plaintiff was able - and inclined - to use the recreation area to ascertain appropriate damages will necessarily require individualized analysis.

As a result, the court finds that individual questions predominate over those of the class with respect to injury and damages.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that plaintiffs' motions to certify class and appointment of class representatives and class counsel [ECF Nos. 60 and 61] are denied.

Dated: March 22, 2023                    s/David S. Doty
                                         David S. Doty, Judge
                                         United States District Court

20